UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────────────

In re                                             Chapter 13
Dennis E. Thompson and
Pamela A. Thompson,                               Case No. 05-28262-svk
　　　　　Debtors.

───────────────────────────────────────────────────────

## MEMORANDUM DECISION ON DEBTORS' MOTIONS
## FOR CERTAIN RELIEF AGAINST WELLS FARGO

───────────────────────────────────────────────────────

　　　Since this case's inception in 2005, it has been fraught with litigation, failed mediations,

discovery disputes, accusations of attorney misconduct and otherwise tumultuous actions.  In

2013, these proceedings eventually culminated in this Court's disallowance of the proof of claim

filed on behalf of Wells Fargo Bank after it was established that Wells Fargo was not the holder

of the mortgage note underlying the claim.  As a result, the pro se debtors filed a flurry of

motions to effectuate the claim disallowance decision.  This memorandum decision will

hopefully end the litigation concerning the mortgage note, at least in the bankruptcy court.

### STATEMENT OF FACTS

　　　On April 14, 2000, Dennis and Pamela Thompson (the "Debtors") signed a home

financing adjustable rate note payable to First National Funding Group.  (Docket No. 246, 1.)[1]

At that time, the Debtors also executed a mortgage, which was recorded with the Milwaukee

County Register of Deeds on May 9, 2000.  (*Id.*)  The Debtors allegedly defaulted on the note,

and on July 2, 2002, the servicer of the loan, The Provident Bank ("Provident"), filed a

foreclosure action in the Circuit Court for Milwaukee County.  In their answer to Provident's

complaint, the Debtors disputed that they were in default on the note, but they did not dispute

───────────────

[1] Except where indicated, all references are to the Court's CM/ECF docket in the Debtors' bankruptcy case no. 05-28262.

that Provident had standing to enforce or collect on the note. The circuit court granted Provident's motion for summary judgment on December 16, 2002 and entered a Judgment of Foreclosure. (Provident Bank v. Dennis Thompson, et al., Milwaukee County Circuit Court, Case No. 02-CV-006532 ("Foreclosure Case"), Order and Judgment of Foreclosure entered Dec. 16, 2002.)

Three years later, on April 29, 2005, and shortly before the Debtors filed their Chapter 13 petition, Provident filed a bare bones petition with the circuit court stating that Provident had been wrongly named as the plaintiff, and that Wells Fargo Bank Minnesota, National Association, solely in its capacity as Trustee, under the Pooling and Servicing Agreement dated June 1, 2000, Home Equity Loan Asset Backed Certificates, Series 2000-2 ("Wells Fargo"),[2] should be substituted. (Foreclosure Case, Petition and Order dated April 29, 2005.) The Debtors were never served with the petition; the order substituting Wells Fargo for Provident was signed the same day the petition was filed. Id.[3]

On May 13, 2005, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. (Docket No. 1.) On May 24, 2005, Wells Fargo, by its servicer Litton Loan Servicing ("Litton"), filed proof of claim no. 2 (the "Claim") for amounts due on the note. The Debtors filed an objection to the Claim on October 27, 2005, challenging the fees charged by Litton and claiming that Litton misapplied payments. (Docket No. 24.) After an evidentiary hearing, the Court

---

[2] Wells Fargo is the principal creditor, but has generally acted through its servicers, Litton and Ocwen. This decision may refer to Wells Fargo or the servicers interchangeably. As Wells Fargo is the entity that filed the disputed Claim and received the payments on the Claim, the Debtors' claims ultimately lie against Wells Fargo. However, by referring to Wells Fargo in this decision, the Court is not relieving the servicers of any claims, to the extent that Wells Fargo's agreements with its servicer require the servicer to pay such claims.

[3] This Court may take judicial notice of the state court record. Fed. R. Evid. 201. See Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012).

allowed the Claim in part, but disallowed certain fees and charges. (Docket No. 67, 10.) The Court also ordered sanctions against Litton for its mishandling of the Debtors' mortgage account. (*Id*.)

On January 12, 2006, the Court confirmed the Debtors' Chapter 13 plan. Under the plan, the Debtors proposed to make direct current mortgage payments and cure their pre-petition mortgage arrearage via payments to the trustee. On June 27, 2011, the Debtors filed a motion to enter into the Court's mortgage modification mediation program with Litton. (Docket No. 142.) In preparation for the mortgage mediation, the Debtors hired an attorney and conducted a title search on their property. (Hearing Recording, Docket No. 164, at 10:53:15.) The title search revealed that Wells Fargo did not hold the title to their mortgage. (*Id.*) Mediation attempts with both Litton and Ocwen Loan Servicing, LLC[4] ("Ocwen"), the current servicer for Wells Fargo, failed. (Docket No. 168; Docket No. 213.)

On March 19, 2012, the Debtors filed a motion that the Court construed as an objection to the Claim. (Docket No. 159.) On April 2, 2012, Ocwen responded to the objection. After several preliminary hearings, discovery disputes, and a final evidentiary hearing, the Court entered an order disallowing the Claim. (Docket No. 217, 5.) The Court determined that neither Wells Fargo nor its servicers had standing to file a claim in the Debtors' bankruptcy case. (*Id.*)

Wells Fargo appealed. U.S. District Judge J.P. Stadtmueller affirmed the Court's decision to disallow Wells Fargo's Claim, holding:

> [E]ven if each version of the note self-authenticates under FRE 902(9), without testimony or other evidence from Ocwen to "'connect the dots'" between the disputed allonge and the note, the evidentiary record contained only equally-probable "authentic" versions of the note countervailing one another. Against that evidentiary backdrop, the bankruptcy court committed no error in finding

---

[4] Litton merged with Ocwen Loan Servicing, LLC. (Docket No. 246, 1.)

3

Case 05-28262-svk    Doc 271    Filed 10/21/14    Page 3 of 25

insufficient evidence to confer standing on Ocwen to prosecute the disputed proof of claim.

*Ocwen Loan Servicing, LLC v. Thompson*, No. 13-CV-487, 2014 U.S. Dist. LEXIS 2109, at \*14-15 (E.D. Wis. Jan. 7, 2014).

Prior to the district court decision, the Debtors filed motions for reimbursement of mortgage payments (Docket No. 222) and attorneys' fees. (Docket No. 223.)  The Court entered an order determining that no action would be taken on the Debtors' motions until after the district court entered a final order in the appeal.  (Docket No. 225.)  After the district court decision, the Debtors filed a motion to require the return of the original note to them. (Docket No. 239.)  The Court set a briefing schedule.  The parties have filed briefs.  The motions are now ripe for decision.

JURISDICTION

Wells Fargo has not questioned this Court's jurisdiction or authority to enter final orders on the Debtors' motions.  But in light of recent developments questioning the ability of the bankruptcy courts to render final judgments on certain state law claims, the Court will address this preliminary issue.

Jurisdiction over bankruptcy cases and proceedings resides in the district court.  28 U.S.C. § 1334(b).  Pursuant to 28 U.S.C. § 157(a), the district court may refer these cases and proceedings to the bankruptcy judges for the district, and the District Court for Eastern District Wisconsin entered a standing order of reference dated July 10, 1984 to accomplish this referral. Under 28 U.S.C. § 157(b)(1), bankruptcy judges may hear, determine and enter final orders in all "core proceedings" arising in a bankruptcy case or arising under the Bankruptcy Code.  If a matter is not a core proceeding, but is related to a bankruptcy case, the bankruptcy judge may hear the proceeding, but must submit proposed findings of fact and conclusions of law to the

4

district court for entry of the final order. 28 U.S.C. § 157(c)(1). A list of core proceedings is found in 28 U.S.C. § 157(b)(2).

In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that even though a proceeding (a counterclaim to a proof of claim) appeared on the list of core proceedings, the bankruptcy judge lacked constitutional authority to enter a final order. Allowance of proofs of claim falls within the core matters that the bankruptcy court may hear and determine under 28 U.S.C. § 157(b)(2)(B). Unlike the entry of a final order on a state law counterclaim, allowance of claims was not deemed unconstitutional in *Stern*. 131 S. Ct. at 2614. *Stern* reaffirmed that bankruptcy courts have the authority to restructure the debtor-creditor relationship and determine "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.; see also Langenkamp v. Culp,* 498 U.S. 42, 44 (1990) (by filing a proof of claim, creditor subjected itself to the bankruptcy court's equitable powers to order recovery of preferences from the creditor); *In re Salander O'Reilly Galleries*, 453 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (application of state law to allow claims properly rests in the bankruptcy court). Unlike the counterclaim in *Stern,* this proceeding directly flows from the allowance of Wells Fargo's claim. The Debtors' motions are not *Stern* claims, as they involve the request for a refund of payments made under a confirmed Chapter 13 plan on a disallowed claim, and related relief. The Court concludes that this is a core proceeding in which the Court is authorized to enter a final order.

ANALYSIS

Reimbursement of Mortgage Payments made on Disallowed Claim

Based on the disallowance of the Claim, the Debtors request a refund of all mortgage payments and trustee payments made to Litton and Ocwen since their bankruptcy case was filed in 2005. (Docket No. 222, 1.) Arguing that they "have every legal right to believe that they

5

Case 05-28262-svk    Doc 271    Filed 10/21/14    Page 5 of 25

were or should have been paying the proper party," (*Id.*), the Debtors calculate that a total of $146,972.45 should be reimbursed to them. (Docket No. 257, 4.) This amount includes $21,587.64 for "lost mortgage payments," $106,167.91 for mortgage payments made outside the plan from July 2005 to December 2011, $11,716.90 for disbursements made by the Chapter 13 trustee on the disallowed Claim, and $7,500.00 for "return of sanction."[5] (*Id.*)

Wells Fargo raises only two objections to the Debtors' motion for a refund of mortgage payments. First, Wells Fargo contends that the Court previously denied this motion at the March 14, 2013 hearing on the Debtors' objection to Wells Fargo's Claim. At the hearing, after the Court announced its decision to disallow the Claim, the Debtors requested that the Court order Wells Fargo and the trustee to refund all of the payments the Debtors had made over the long history of this bankruptcy case. The Court orally remarked that only payments made after the Debtors filed the most recent Claim objection should be returned to the Debtors; the trustee replied that no such payments were made. Wells Fargo argues that as a result of the Court's oral "ruling" on this issue, the Debtors' motion is procedurally flawed, and should be cast as a motion to reconsider, with the corresponding deadlines and burdens involved in such a motion. (Docket No. 246, 3.) Second, Wells Fargo argues that the Court must balance the equities under the circumstances.[6] Wells Fargo notes that Ocwen and Litton both expended funds during the course of the bankruptcy to prevent the Debtors' property from going into tax foreclosure. (*Id.* at

---

[5] The Court's September 22, 2006 decision reduced the Claim by $7,500 to account for the attorneys' fees, costs, and damages incurred by the Debtors in attempting to resolve Litton's mishandling of their mortgage loan account.

[6] Wells Fargo mentions that the Court "must balance the equities of the parties and in doing so apply the equitable doctrine of laches, setoff or recoupment." (Wells Fargo Objection 5.) However, Wells Fargo never develops these arguments except to note that "any order requiring return of payments to Debtors must be offset by the payments Ocwen and Litton paid on Debtors' behalf." (*Id.* at 6.)

6

5.)  Wells Fargo also argues that the Court's decision disallowing the Claim did not alter the fact that the "Debtors borrowed money on April 14, 2000, and have yet to repay their debt," and "[u]nder the circumstances, it would be inequitable to require Ocwen to take yet another loss on this account."  (*Id.* at 5-6.)

A.  *Refund of mortgage payments made by the Debtors*

The Court rejects Wells Fargo's attempt to characterize the Court's comments at the March 13, 2013 hearing as a definitive ruling on whether Wells Fargo should have to refund the payments it received from the Debtors during the bankruptcy case.  Review of the transcript confirms that the Court's focus was on the standing of Wells Fargo and Ocwen to file the Claim, not on the remedy that might follow from disallowance.  (Docket No. 228-1.)  Neither party had briefed the issue of the refund of the payments; rather all attention was directed at the lack of a proper endorsement of the mortgage note to Wells Fargo.  The Court and the Debtors were surprised that Wells Fargo did not provide a witness (as it had at a previous hearing) to authenticate the disputed allonge to the note.  Once the Court determined that Wells Fargo could not prove its entitlement to file a proof of claim, the discussion turned mostly to the funds held by the trustee, not the refund of payments made directly by the Debtors to Litton and Ocwen.  The Court's written decision did not address returning payments to the Debtors.  The Debtors' original motion was properly construed and treated by all parties as a claim objection, not as a motion to refund the Debtors' mortgage payments.  The motion to return the mortgage payments was filed after the hearing, and is currently before the Court.

To the extent that the Court's discussion of the Debtors' payments at the hearing could properly be considered an oral ruling on the request for return of the Debtors' mortgage payments, the Court rejects Wells Fargo's argument that the Debtors must satisfy the

requirements of Rule 9024 of the Federal Rules of Bankruptcy Procedure or Rule 60(b) of the Federal Rules of Civil Procedure. Instead, the Court's written opinion on the Debtors' motion would supersede any earlier oral ruling. *See, e.g., United States v. Ganier*, 468 F.3d 920, 925 n.3 (6th Cir. 2006) ("The later written opinion supersedes the earlier oral ruling."); *In re Canopy Fin., Inc.*, 708 F.3d 934, 935 (7th Cir. 2013) ("Imprecise phrasing is common in oral statements of reasons, such as the bankruptcy judge's. This court would not like to be bound by judges' statements at oral argument, as opposed to our written opinions.); *O'Neill v. AGWI Lines*, 74 F.3d 93, 95 (5th Cir. 1996) ("[T]o the extent that the district court's statements from the bench conflict with its formal findings and conclusions of law, we need not consider them."); *Harbor Tug & Barge, Inc. v. Belcher Towing Co.*, 733 F.2d 823, 827 n.3 (11th Cir. 1984) ("The trial judge was not bound by his off-hand remarks."); *Ferree v. Doric Co.*, 383 P.2d 900, 904 (Wash. 1963) ("It must be remembered that a trial judge's oral decision is no more than a verbal expression of his informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment.") Here, the Court's statements regarding the Debtors' mortgage payments were never incorporated into a written decision or order. The current motion before the Court is now focused precisely on the issue of the mortgage payments, and a written decision rendered by the Court on the motion would supersede any prior oral discussion of the issue.[7]

Wells Fargo's second argument requests that the Court balance the equities under the circumstances. Wells Fargo cites one case to support its position, which notes that "[c]ourts

---

[7] The Court is not suggesting that the Debtors could not satisfy the burdens of Rule 9024. Their motion was promptly filed after the written decision, and the Court's further consideration and research suggests that the Debtors are entitled to the refund.

exercising equitable powers must behave akin to doctors operating under the Hippocratic Oath: first, do no harm.  We must do equity to all parties and not just the party seeking equitable assistance . . ." *Briarwood Club, LLC v. Vespera, LLC*, 2013 WI App 119, ¶ 1, 351 Wis. 2d 62, 839 N.W.2d 124.  Wells Fargo suggests that if the Court grants the Debtors' request, the Debtors will gain a free house.  It notes that the Debtors borrowed money that they have not fully repaid, and as long as they are not required to repay it twice, the Debtors are obligated under the mortgage note.  (Docket No. 246, 6.)  Wells Fargo explains that while it may not have legal enforcement power under Wisconsin law, it does still hold physical possession of the note.  (*Id.*) And, according to Wells Fargo, since there have not been any competing claims for repayment on the loan, it would be inequitable for the Court to require Wells Fargo to take another loss on this delinquent account.  (*Id.* at 7.)

A similar argument was made and rejected in *Thomas v. Urban P'ship Bank, Residential Credit Solutions, Inc.*, 2013 U.S. Dist. LEXIS 59818 (N.D. Ill. April 26, 2013).  In that case, Barbara Thomas filed suit against Urban Partnership Bank, alleging that Urban sought payments on a mortgage loan that it did not own.  The central issue involved whether Thomas's mortgage loan was included in an asset purchase agreement executed between Urban and Thomas's original lender, ShoreBank.  Urban moved to dismiss the complaint, arguing among other theories that there were no competing claims for payment on the note.  But Thomas's unjust enrichment claim survived the motion to dismiss.  According to the district court:

> Thomas clearly alleges that she owes someone money under the mortgage loan
> and that that someone is not Urban, and so it is irrelevant that no one else is
> currently making claims to her mortgage payments.  If Thomas is correct that she
> owes money to someone other than Urban, then by paying Urban she has lost
> money without reducing the debt she owes to the loan's true owner. . . . That
> amounts to the enrichment of Urban to Thomas's detriment, since Thomas has
> lost and Urban has gained money for nothing . . . If, as Thomas adequately
> alleges, Urban had no right under the mortgage loan to the payments it received

9

and Thomas made the payments on the mistaken premise that Urban was the loan's owner, then fundamental principles of justice, equity, and good conscience require that Urban disgorge the payments . . . .

*Id.* at *27-29 (internal citations and quotations omitted).[8]

The district court in *Thomas* relied on *Bank of Naperville v. Catalano*, 86 Ill. App. 3d 1005, 408 N.E.2d 441, 444, 42 Ill. Dec. 63 (Ill. App. 1980), in which the court held, "As a general rule, where money is paid under a mistake of fact, and payment would not have been made had the facts been known to the payor, such money may be recovered." The court also cited the Restatement (Third) of Restitution and Unjust Enrichment § 6 (2011) "Payment of Money Not Due" to the effect that payment by mistake gives the payor a claim in restitution against the recipient to the extent payment was not due, and a payor's mistake as to liability may be a mistake about the identity of the creditor.

The Restatement discusses two examples of payment by mistake that may be applicable here: mistake as to payee and mistake as to liability.[9] Under mistake as to payee, the Restatement notes that "[a] mistaken payor has a claim in restitution when money is mistakenly transferred to someone other than the intended recipient." The illustrations and cases cited under this comment focus on situations where the parties are aware of who the correct recipient of the

---

[8] Wisconsin unjust enrichment law is similar. In Wisconsin, a claim for unjust enrichment must satisfy three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 83 Wis. 2d 686, 689 (1978).

[9] These alternate theories were not examined in *Bailey v. Wells Fargo Bank, NA (In re Bailey)*, 437 B.R. 721 (Bankr. D. Mass. 2010), in which the court held that the true mortgagee, not the debtor, had a valid unjust enrichment claim against Wells Fargo, who allegedly did not hold the mortgage. However, as the court recognized in *Thomas*, by paying the wrong creditor, the debtor has lost money without reducing the debt owed to the loan's true owner, thereby establishing entitlement to a refund of the mistaken payments.

10

money should be, but an incorrect party receives the money by mistake. Under mistake as to liability, the Restatement states that "[a] payor's mistake as to liability may be a mistake about the identity of the creditor. In such a case, the payor believes that an obligation runs to the payee when in fact the obligation is to someone else." The latter example applies here.[10] The Debtors mistakenly believed that Wells Fargo was entitled to enforce the mortgage note. Wells Fargo's servicers filed proofs of claim in the bankruptcy case, and they directed the Debtors to send their mortgage payments to Wells Fargo, in care of the servicers. The servicers accepted the Debtors' mortgage payments on behalf of Wells Fargo, when in fact, Wells Fargo did not validly hold the mortgage note, and Wells Fargo was not entitled to the payments.

Although Wells Fargo has responded to the Debtors' request for a refund with a plea for equity,[11] in fact, the equities here favor the Debtors. A claim for unjust enrichment is based on the "universally recognized moral principle that one who received a benefit has the duty to make restitution when to retain such a benefit would be unjust." *Puttkammer v. Minth*, 83 Wis. 2d at 689 (quoting *Fullerton Lumber Co. v. Korth*, 37 Wis. 2d 531, 536 (Wis. 1968)). However, it is not enough to merely establish that a benefit was conferred and retained; the retention must also be inequitable. *Id.* This Court previously determined that Wells Fargo is not the holder of the Debtors' mortgage note with legal authority to enforce it; that determination was affirmed on appeal. Without authority to enforce the note, Wells Fargo is not entitled to receive payments

---

[10] The Debtors were not the only ones suffering under a mistake of fact. Provident filed documents in this bankruptcy case until August 9, 2006, although Wells Fargo petitioned to be substituted as plaintiff in the Foreclosure Case on April 29, 2005. (*See* Docket No. 60; Docket No. 211, Ex. 20.) Counsel for Wells Fargo eventually filed correspondence with the Court on September 25, 2006, indicating that Wells Fargo was perhaps the correct party in interest. (Docket No. 72.) Provident also filed proofs of claim even after 2005, when Wells Fargo allegedly was the proper claimant.

[11] Other than the provisions of Bankruptcy Rule 9024 and general equitable principles, Wells Fargo cited no case, statute or other legal authority to counter the Debtors' motion for reimbursement of the mortgage payments.

under the note. Only the party with a legally enforceable right to enforce the note is entitled to retain the benefit of the Debtors' mortgage payments. Nevertheless, Wells Fargo, through its servicers, received voluntary payments from the Debtors and payments from the Trustee since the commencement of this bankruptcy case, subjecting the Debtors to the possibility of having to pay twice if the true owner of the note appears. Since Wells Fargo and its servicers have no legal right to the Debtors' mortgage payments, retention of the Debtors' mortgage payments would be inequitable.

The Debtors contend that they should be reimbursed $21,587.64 in "lost mortgage payments" and $106,167.91 in mortgage payments they made from July 2005 through December 2011. (Docket No. 257, 4.) But the Debtors do not provide any detail or evidence in support of these numbers. In connection with the Claim objection hearing, Wells Fargo filed a detailed transaction history for the Debtors' mortgage account (Docket No. 211, Ex. 11). Adding all of the entries for "payment" shows that the Debtors paid $97,979.68 from February 2006 to July 2011. (Docket No. 211, Ex. 11).[12] Additionally, Wells Fargo should credit the Debtors with $7,500 for the sanctions awarded in the prior claim objection proceeding. (*See* Docket No. 103, at 10), for a total of $105,479.68.

Wells Fargo points out that it made real estate tax payments on the Debtors' behalf that should be deducted from any refund claim. The Court agrees. After subtracting $32,438.19 for the tax payments made on the Debtors' behalf, the Debtors' total claim for unjust enrichment is

---

[12] Attached to this Decision as Exhibit A is a detailed listing of the Debtors' principal and interest payments as shown by Wells Fargo's transaction history. The multiple payments on May 9, 2006 and May 31, 2006 are actually payments that were made but never credited to the Debtors' account until after the initial Claim objection proceeding. This is confirmed in an email from Wells Fargo's attorney to the Debtors. (Docket No. 103, 10.) The $7,500 sanction payment was applied to escrow and should be added to the amount of the refund.

$73,041.49.  Under the circumstances, Wells Fargo should be required to return this amount to the Debtors to avoid being unjustly enriched.

   B.  *Return of disbursements made by the Chapter 13 trustee under the plan*

   The Debtors also request that Wells Fargo return the payments the Chapter 13 trustee disbursed under the Chapter 13 plan.  Since the Court disallowed the Claim, the Debtors argue that Wells Fargo is not entitled to retain the plan payments.  The Chapter 13 trustee filed a limited objection to the Debtors' motion, requesting that any disgorged funds be returned directly to the trustee for further distribution under the plan.  (Docket No. 231.)  Both Wells Fargo and the Debtors agree that the trustee disbursed $11,716.90 to Wells Fargo under the Chapter 13 plan.  These funds should be returned to the trustee for disbursement to creditors with allowed proofs of claim.

   Section 502(j) of the Bankruptcy Code specifically provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case."  The last sentence of the subsection notes that "[t]his subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor."  § 502(j).  Thus, if an allowed claim is reconsidered and disallowed in whole or in part, the trustee may recover the retroactively improper distribution from the creditor who received it.

   Courts agree that the Bankruptcy Code grants implicit authority to the trustee to recoup improperly distributed funds.  In *Stevens v. Baxter (In re Stevens)*, the court analyzed the trustee's role in the bankruptcy case administration, noting that "[t]he Chapter 13 trustee's power to recover overpayment is inherent in the overall scheme of a trustee's fiduciary duties as a necessary means to ensure that the trustee's payment system functions smoothly."  187 B.R. 48,

13

51-52 (Bankr. S.D. Ga. 1995), a*ff'd in part and rev'd in part, Ford Motor Credit Co. v. Stevens (In re Stevens)*, 130 F.3d 1027, 1031 (11th Cir. 1997); *see also Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 476 n.10 & 477 (Bankr. E.D. Tenn. 2002) ("It is clear from [§ 502(j)] that a trustee's authority to recover overpayments from a creditor is implied or contemplated by the Bankruptcy Code notwithstanding the absence of a specific Bankruptcy Code provision expressly granting such authority."). These courts recognize the ability of a Chapter 13 trustee to recover improper distributions, but at least one court also acknowledged the debtor's standing to sue for improper distributions.

In *Sims*, the Chapter 13 trustee commenced an adversary proceeding against Capital One for its alleged practice of filing excessive claims in multiple Chapter 13 proceedings. As an element of its defense, Capital One argued that the debtors did not have standing to object to its proof of claim. The court refused to accept that argument, noting that "the chapter 13 debtor is a party in interest with standing under § 502(a) to object to claims." *Sims*, 278 B.R. at 484. More importantly, the court explained:

> A corollary of the right to object to claims is the right to recover overpayments which have been inappropriately distributed. Typically these actions should be instigated by the chapter 13 trustee since the trustee is accountable for all the property received and the party responsible for making distributions to creditors. *See* 11 U.S.C. §§ 704(2), 1302(b)(1) and 1326(c). Although any sums recovered would be redistributed to other creditors rather than enuring to the benefit of the debtor, as noted above the chapter 13 debtors nonetheless have an interest in ensuring that their plan payments are properly distributed so that no creditor is allowed to retain funds which do not rightfully belong to it, whether distributed in error or due to the intentional deception of the creditor. As such, chapter 13 debtors, either individually or in conjunction with the chapter 13 trustee, have standing to recover on behalf of the estate any sums misdistributed.

*Id.* at 484.

In this case, since Wells Fargo had no standing to file the Claim on the mortgage note and the Claim has been disallowed, Wells Fargo and its servicers should return all of the improper

distributions received under the Debtors' Chapter 13 plan.  Although the Debtors argue that the recovered funds should be returned directly to them, this remedy is inappropriate.  A Chapter 13 bankruptcy estate includes, in addition to property of the debtor at the time of filing, any property or earnings acquired post-filing before the case is closed, dismissed, or converted.  11 U.S.C. § 1306(a).  Thus, an overpayment to a creditor by a Chapter 13 trustee is considered property of the estate under § 1306(a).  *See Stevens*, 187 B.R. at 52; *Sims*, 278 B.R. at 484 (noting that "any sums recovered would be redistributed to other creditors rather than enuring to the benefit of the debtor").  The Court concludes that the entire $11,716.90 disbursed to Litton and Ocwen, on behalf of Wells Fargo by the Chapter 13 trustee should be returned to the trustee for disbursement to creditors holding valid proofs of claim in the Debtors' bankruptcy case.

<u>Request for Attorneys' Fees</u>

The Debtors also filed a motion for attorneys' fees, arguing that Wells Fargo should pay approximately $12,500 in fees and costs the Debtors expended in connection with the failed mediations with Litton and Ocwen.  According to the Debtors, "[u]nnecessary protracted negotiations have been ongoing since 2010.  Starting with Litton Loan and ending with Ocwen. The plaintiff has misrepresented their standing, despite the efforts of the debtors to discuss this matter in the mediation process."  (Docket No. 223 at 1-2.)  The Debtors also request punitive damages under 28 U.S.C. § 1927 for "vexatious litigation conduct" by Litton and Ocwen.  (*Id.* at 2.)  They note that Litton failed to attend several scheduled mediation sessions, and when Ocwen reinitiated mediation proceedings in 2012, there was a "delay to the debtors of 6 hours in the first and only scheduled mediation, with the debtors believing that progress was being established." (*Id.*)

15

Wells Fargo responds that the general rule is that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). However, the Supreme Court has determined that this general rule may be modified by statutory provision,[13] and the Debtors have cited 28 U.S.C. § 1927 as authority for their motion. (Docket No. 248, 3.) Wells Fargo disputes that its conduct rose to a malicious level, asserting that Litton and Ocwen participated in the mediation proceedings believing that Wells Fargo held the Debtors' mortgage note containing a special endorsement. (*Id.* at 4.) Wells Fargo also notes that it held a judgment in its favor as a result of the state court proceedings that spontaneously substituted Wells Fargo as plaintiff. (*Id.*)

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Seventh Circuit determined that "[s]anctions under § 1927 are appropriate against an attorney who 'has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice' or where a claim is without plausible factual or legal basis and lacking in justification." *Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818 (N.D. Ill. 1992) (quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988)).

Setting aside the issue of whether this Court possesses jurisdiction to impose sanctions under § 1927, Bankruptcy Code § 105 provides the Court with similar authority. *See, e.g., In re Volpert*, 110 F.3d 494, 489-99 & n.5 (7th Cir. 1997); *Regensteiner*, 142 B.R. at 818 (collecting cases). According to the court of appeals:

> Section 105 grants broad powers to bankruptcy courts to implement the
> provisions of Title 11 and to prevent an abuse of the bankruptcy process. The

---

[13] *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 448 (2007) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967)).

broad power to "issue any order . . . appropriate to carry out the provisions" of Title 11 and "to prevent an abuse of process" certainly encompasses the power to issue an order to sanction an attorney who, in the words of 28 U.S.C. § 1927, "multiplies the proceedings . . . unreasonably and vexatiously." We therefore hold that, under 11 U.S.C. § 105(a), bankruptcy courts may punish an attorney who unreasonably and vexatiously multiplies the proceedings before them.

*Volpert*, 110 F.3d at 500.

The Debtors cite only one case in support of their position, *Emigrant Mortg. Co. v. Corcione,* 28 Misc. 3d 161 (N.Y. Sup. Ct. 2010).[14] In that case, after the borrowers defaulted on their payments to their mortgage lender, they attempted to negotiate an amicable resolution. The court ordered the parties to participate in a mandatory foreclosure settlement conference, and the lender presented a proposed loan modification agreement. The court found that the provisions in the agreement "revealed some deplorable particulars" and found that "Plaintiff's position appears to be facially unreasonable." *Id.* at 165. This case does not rise to the level of egregiousness reflected in *Corcione*. Although the Debtors have the right to be disappointed that the mediation did not succeed despite the attorneys' fees that the Debtors expended, Wells Fargo's attorneys acted under the impression that their client had proper standing. The Court finds that Wells Fargo's attorneys did not unreasonably and vexatiously multiply the proceedings by their conduct in this case, and the Debtors' request for attorneys' fees is denied.

<u>Request for Return of Note</u>

The Debtors' final motion asks the Court to order Wells Fargo to turn over the original mortgage note to them. Despite the Court's ruling that Wells Fargo cannot enforce the note, the Debtors are concerned that Wells Fargo will somehow sell, transfer or trade the note, subjecting the Debtors to further litigation, emotional distress and financial hardship. Wells Fargo responds

---

[14] This decision was vacated on rehearing when the parties reached an amicable and fair settlement. *Emigrant Mortg. Co., Inc. v. Corcione*, 2010 N.Y. Misc. LEXIS 6933 (N.Y. Sup. Ct. Oct. 14, 2010).

by attempting to discern the legal theories under which the Debtors are attempting to proceed, and then casting aspersions on those theories. The Court generally agrees with Wells Fargo that the Debtors could not succeed on a replevin claim or turnover action based on the note as property of the bankruptcy estate. However, the theory that the surrender of the original note consequently follows from the disallowance of Wells Fargo's Claim warrants further analysis. The Court also takes this opportunity to clarify that, while not "undoing" any part of the Foreclosure Court's judgment, Wells Fargo's ability to enforce that judgment was never finally determined by the Foreclosure Court, and the disallowance of Wells Fargo's Claim on standing grounds strongly suggests that Wells Fargo has no such ability.

Wells Fargo claims that the "Debtors' motion seems to presume that the Court's order disallowing Wells Fargo's proof of claim operated to invalidate the underlying loan transaction or discharge Debtors' payment obligations under the mortgage note." (Docket No. 260, 4.) Wells Fargo argues that the disallowance of the Claim does not "impugn the validity of the indebtedness under the mortgage note or purport to undo any part of the state court's Judgment of Foreclosure, which was a final adjudication on these matters." (*Id.*) However, Wells Fargo does not cite any statute or case law to support its position, except to quote the Court at the March 14, 2013 Claim objection hearing. At the hearing, the Court remarked that the Debtors' concerns are vitiated as long as they only have to pay the mortgage note once. Based on that statement by the Court, Wells Fargo concludes that the Debtors' motion for return of the note is not supported by the Court's disallowance of Wells Fargo's Claim. The Debtors counter that since the note is not endorsed to Wells Fargo nor any of its affiliates and is not endorsed in blank, Wells Fargo has no right to retain possession of the note. (Docket No. 261, 4.)

18

Neither the Debtors nor Wells Fargo cited any case law supporting their position on whether the note should be returned to the Debtors after disallowance of the Claim, and the Court's independent research uncovered no case directly on point. Wells Fargo heavily relies on the *Rooker-Feldman* doctrine and issue preclusion as defenses to turnover of the note. Wells Fargo's reliance is misplaced, because, as this Court already determined in the Claim objection proceeding, the issue of whether Wells Fargo was the correct party to foreclose on the Debtors' mortgage was never actually litigated in the Foreclosure Case. Recall that after several months of litigation, the Circuit Court for Milwaukee County entered a judgment of foreclosure in favor of Provident. Three years later, without notice to the Debtors, and on the same day that a bare-bones petition was filed, the Circuit Court entered an order substituting Wells Fargo for Provident as the plaintiff in the Foreclosure Case. [15] The substitution order was still appealable when the Debtors filed their Chapter 13 petition.

Issue preclusion involves a two-step analysis "(1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair." *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 728 N.W.2d 693. The first step requires that the issue or fact "was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination

---

[15] An unpublished Wisconsin Court of Appeals case discussed substitution of a plaintiff in a foreclosure action, concluding that substitution was proper under the circumstances. The court of appeals noted that Wis. Stat § 803.01(1) allows for substitution of a plaintiff in order to "minimize the consequences and injustice of dismissing an action where an honest mistake has been made in choosing the party in whose name the action has been filed." *U.S. Bank Nat'l Ass'n v. Benes-Teale*, 2012 WI App 52, ¶ 8, 340 Wis. 2d 742, 813 N.W.2d 248 (citing Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapter 801-803*, 59 Marq. L. Rev. 1, 74 (1976)). In that case, unlike here, the appellee questioned whether the original plaintiff was the real party in interest, and asked the court of appeals to dismiss the foreclosure despite the fact that the correct party had ultimately been substituted. Here, the situation is reversed. The Debtors do not dispute that the correct party originally filed the foreclosure action; instead, they argue that the substitution of Wells Fargo was in error, and the correct party in interest is no longer the plaintiff in the case. (Docket No. 261, 4-5.)

was essential to the judgment." *Id.* at ¶ 37. The second step instructs the court to investigate whether applying the doctrine of issue preclusion satisfies notions of fundamental fairness. *Id.* at ¶ 61. Here, while the validity of the note and mortgage *in favor of Provident* was actually litigated and determined in the Foreclosure Case, Wells Fargo's substitution as the plaintiff was summarily ordered without notice to the Debtors or any hearing on the issue. The Debtors were not afforded a reasonable opportunity to obtain review of the substitution order before the automatic stay intervened. That the party sought to be precluded had a reasonable opportunity to obtain review of the prior court's order is a basic premise of the fundamental fairness prong of the issue preclusion analysis. *Id.* This Court previously denied Wells Fargo's attempt to establish its standing to file the Claim based on the judgment and order of substitution in the Foreclosure Case. For the same reasons, issue preclusion does not act to bar the Debtors' claim for return of the note.

The *Rooker-Feldman* doctrine is rooted in two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the doctrine, lower federal courts are divested of subject-matter jurisdiction when, after state court proceedings are final, a losing party in state court files suit in federal court seeking review, redress, and rejection of an injury caused by the state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Wells Fargo argues that application of the *Rooker-Feldman* doctrine divests this Court of jurisdiction to invalidate the note and mortgage, and this Court generally agrees. The validity of the note and mortgage were determined in the Foreclosure Case, and the appeal period on the judgment of foreclosure expired before the Debtors filed bankruptcy. However, whether Wells Fargo had standing to enforce the note and mortgage was never determined in the Foreclosure Case and

20

was not part of the state court judgment.  The proceedings in the Foreclosure Case were not "final" as to Wells Fargo when the Debtors filed bankruptcy.  Accordingly, the Court's consideration of the Debtors' claim for return of the note does not offend the *Rooker-Feldman* doctrine.

Since the Court is not precluded from exercising jurisdiction over the Debtors' motion based on either the *Rooker-Feldman* doctrine or issue preclusion, the Court may consider the merits of the Debtors' claim.  The Debtors' argument hinges on the idea that Wells Fargo does not have standing to prosecute any action against the Debtors.  They rely on *Edwards v. Deutsche Bank Nat'l Trust Co. (In re Edwards)*, No. 11-2505, 2011 Bankr. LEXIS 5065 (Bankr. E.D. Wis. Dec. 23, 2011) and *Schilling by Foy v. Employers Mutual Casualty Co.*, 569 N.W.2d 776 (Wis. Ct. App. 1997).  (Docket No. 261, 4.)  Neither of these cases supports the Debtors' motion.  In *Edwards*, the bankruptcy court found that Deutsche Bank was entitled to enforce a mortgage note because it was the holder of the instrument endorsed in blank under Wis. Stat. § 403.301.  *Id.* at 19-20.  The note in this case is not endorsed in blank.  *Schilling* is not factually similar as it involved whether a student was a third-party beneficiary to an employment contract between a teacher and the school district.  The court in *Edwards* cited *Schilling* for the proposition that only a party to a contract or a third party beneficiary to a contract has standing to raise a contract claim.

The Court's independent research uncovered many cases on the issue of enforcement of a mortgage note.  *See* Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 642 n.17 (2013) (collecting cases).  Generally, the cases appear to end at a dismissal of the judgment of foreclosure or a remand to the trial court for additional proceedings.  *See, e.g., PHH Mortg. Corp. v. Kolodziej*, 2011 WI App 58, 332

Wis. 2d 804, 798 N.W.2d 319 (reversing summary judgment when evidence did not provide authentication for the mortgage assignment or endorsed note); *In re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio 2009) (disallowing bank's claim in Chapter 13 case when it failed to establish it had standing and was entitled to enforce the note and mortgage).

*U.S. Bank, Nat'l Ass'n v. Moore*, 2012 OK 32, 278 P.3d 596, is a typical case. In *Moore*, the borrowers executed a note and mortgage and later defaulted. When U.S. Bank began foreclosure proceedings, the borrowers answered and questioned whether U.S. Bank was the present holder of the note. The state court granted summary judgment when U.S. Bank finally submitted the note with an assignment dated after the foreclosure suit commenced. In response, the borrowers filed bankruptcy, and the bankruptcy court lifted the stay to allow the borrowers to seek to vacate the foreclosure judgment. The Oklahoma Supreme Court found that the trial court abused its discretion in refusing to vacate the judgment. The court held that U.S. Bank must have demonstrated that it became the person entitled to enforce the mortgage note prior to filing the foreclosure case. Reversing and remanding the case to determine whether U.S. Bank was entitled to enforce the note when the foreclosure complaint was filed, the court explained:

> It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the Note, and to have the proper supporting documentation in hand when filing suit, showing the history of the Note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument.

*Id.* at ¶ 21. See also *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St. 3d 13, 2012-Ohio-5017, 979 N.E.2d 1214 ("Here, it is undisputed that Federal Home Loan did not have standing at the time it commenced this foreclosure action . . . Accordingly, the judgment of the court of appeals is reversed, and the cause is dismissed."); *Eaton v. Fannie Mae*, 969 N.E.2d

22

1118 (Mass. 2012) (The court held that a foreclosure sale was invalid because the foreclosing party did not hold the promissory note at the time of the sale and remanded the case for further proceedings).

However, merely because a creditor, like Wells Fargo here, does not have standing to enforce a note or foreclose on a mortgage, it does not necessarily follow that the note itself is invalid or the mortgage cannot be enforced by the proper party in interest. As the Oklahoma Supreme Court noted in *Moore,*

> Likewise, for the homeowners, absent adjudication on the underlying indebtedness, today's decision to reverse the dismissal of the petition and motion to vacate cannot cancel their obligation arising from an authenticated Note, or insulate them from foreclosure proceedings based on proven delinquency. This Court's decision in no way releases or exonerates the debt owed by the defendants on this home.

*Moore,* 2012 OK 32 at ¶ 21.

In *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St. 3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, the court noted that "The lack of standing at the commencement of a foreclosure action requires dismissal of the complaint; however, that dismissal is not an adjudication on the merits and is therefore without prejudice." In this case, in seeking return of the mortgage note, the Debtors in effect are asking for a dismissal with prejudice of the Foreclosure Case. This is a drastic sanction that should not be ordered absent a showing of "egregious conduct or bad faith." *Haselow v. Gauthier*, 212 Wis. 2d 580, 591 (Ct. App. 1997) (collecting cases)).

The Supreme Court of Vermont recently considered a case with similar facts. In *U.S. Bank Nat.'l Ass'n v. Kimball*, 2011 VT 81, ¶ 27 & n.6, 190 Vt. 210, 27 A.3d 1087, U.S. Bank filed a foreclosure complaint that was dismissed with prejudice when it was unable to prove standing to enforce the mortgage note. On appeal, the Vermont Supreme Court reversed and

23

directed a dismissal without prejudice, noting that involuntary dismissal for lack of standing is not a determination on the merits of foreclosure. *Id.* at ¶ 23. The court agreed with other courts that simply because a creditor lacks standing to enforce a note, the debtor is not discharged of her obligations under the note. *Id.* This Court has concluded (and the district court on appeal agreed) that Wells Fargo is neither the holder of the note nor a nonholder in possession of the instrument with the rights to enforce it. (Docket No. 233, 11.) Therefore, Wells Fargo (and its affiliates, servicers, successors and assigns) cannot enforce the note, but that fact does not cancel the note nor discharge the Debtors' obligations to the true owner.

In the absence of any authority for their request for turnover of the original note and analogizing to the cases requesting dismissal with prejudice, the Debtors' motion to require Wells Fargo to surrender the original note is denied.

## CONCLUSION

The Debtors' motion for reimbursement of the payments made on Wells Fargo's disallowed Claim is granted, subject to offset for real estate taxes paid by Wells Fargo. Within 30 days of the date of this Order, Wells Fargo must pay $73,041.49 to the Debtors and $11,716.90 to the Chapter 13 trustee. The Debtors' motions for reimbursement of attorneys' fees and turnover of the original note are denied. The foregoing constitutes the Court's findings of fact and conclusions of law. The Court will enter separate orders on each motion.

Dated: October 21, 2014

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge

24

# Exhibit A

| Payment Date | Amount | Pymt Date (cont.) | Amount |
|---|---|---|---|
| 02/06/2006 | 1,659.97 | 05/26/2009 | 1,427.61 |
| 05/09/2006 | 1,659.97 | 06/24/2009 | 1,427.61 |
| 05/09/2006 | 1,659.97 | 07/29/2009 | 1,427.61 |
| 05/09/2006 | 2,501.62 | 08/05/2009 | 1,317.28 |
| 05/09/2006 | 2,501.62 | 09/03/2009 | 1,317.28 |
| 05/09/2006 | 1,659.97 | 10/08/2009 | 1,317.28 |
| 05/09/2006 | 1,659.97 | 11/09/2009 | 1,317.28 |
| 05/09/2006 | 2,501.62 | 12/07/2009 | 1,317.28 |
| 05/10/2006 | 1,659.97 | 02/01/2010 | 1,317.28 |
| 05/10/2006 | 1,659.97 | 06/02/2010 | 1,272.31 |
| 05/31/2006 | 1,659.97 | 07/19/2010 | 1,272.31 |
| 05/31/2006 | 1,659.97 | 07/27/2010 | 1,272.31 |
| 05/31/2006 | 1,659.97 | 10/05/2010 | 1,272.31 |
| 05/31/2006 | 1,659.97 | 11/12/2010 | 1,272.31 |
| 05/31/2006 | 1,659.97 | 01/06/2011 | 1,272.31 |
| 09/08/2006 | 1,659.97 | 02/03/2011 | 1,378.56 |
| 10/13/2006 | 1,659.97 | 04/01/2011 | 1,378.56 |
| 11/15/2006 | 1,659.97 | 07/06/2011 | 1,378.56 |
| 12/04/2006 | 1,659.97 | **Total payments** | **$97,979.68** |
| 12/15/2006 | 1,659.97 | | |
| 01/16/2007 | 1,659.97 | | |
| 04/09/2007 | 1,659.97 | | |
| 04/19/2007 | 1,659.97 | | |
| 06/18/2007 | 1,659.97 | | |
| 07/20/2007 | 1,659.97 | | |
| 08/21/2007 | 1,659.97 | | |
| 09/19/2007 | 1,659.97 | | |
| 10/12/2007 | 1,659.97 | | |
| 11/20/2007 | 1,659.97 | | |
| 01/22/2008 | 1,659.97 | | |
| 03/28/2008 | 1,659.97 | | |
| 05/02/2008 | 1,084.14 | | |
| 05/02/2008 | 1,084.14 | | |
| 05/30/2008 | 1,084.14 | | |
| 06/26/2008 | 1,084.14 | | |
| 06/26/2008 | 1,084.14 | | |
| 08/11/2008 | 1,084.14 | | |
| 09/03/2008 | 1,541.99 | | |
| 09/29/2008 | 1,541.99 | | |
| 11/05/2008 | 1,541.99 | | |
| 12/05/2008 | 1,541.99 | | |
| 01/05/2009 | 1,541.99 | | |
| 02/04/2009 | 1,541.99 | | |
| 03/06/2009 | 1,427.61 | | |
| 04/03/2009 | 1,427.61 | | |
| 04/24/2009 | 1,427.61 | | |