UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Dennis E. Thompson and
Pamela A. Thompson,
              Debtors.

Chapter 13

Case No. 05-28262-svk

**MEMORANDUM DECISION DENYING MOTIONS TO RECONSIDER**

After the Court disallowed the proof of claim filed by Wells Fargo,[1] Dennis and Pamela Thompson (the "Debtors") filed motions seeking further relief. On October 21, 2014, the Court issued a comprehensive Memorandum Decision granting one of the Debtors' motions, but denying the others. (Docket No. 271.) On November 4, 2014, Wells Fargo filed a motion for reconsideration under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e). (Docket No. 280.) On November 17, 2014, the Debtors responded to Wells Fargo's motion and filed their own motions for reconsideration. (Docket Nos. 281, 282, 283.)

Wells Fargo's motion requests only that the Court reconsider its decision granting the Debtors' motion for reimbursement of payments the Debtors made to Wells Fargo. (Docket No. 280 at 2.) Wells Fargo does not seek reconsideration of the Court's order directing Wells Fargo to return funds distributed by the Chapter 13 Trustee.

Bankruptcy Rule 9023, which incorporates Rule 59(e) of the Federal Rules of Civil Procedure, governs Wells Fargo's request. "Courts may grant Rule 59(e) motions 'to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a

---

[1] The formal name of the entity that filed the proof of claim is Wells Fargo Bank Minnesota, National Association, solely in its capacity as Trustee, under the Pooling and Servicing Agreement dated June 1, 2000, Home Equity Loan Asset Backed Certificates, Series 2000-2. In this decision as in the Court's original decision, this entity and its agents and servicers are referred to as "Wells Fargo."

manifest error of law or fact.'" *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). However, "a 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). And "it is well-settled that a Rule 59(e) motion is not properly utilized 'to advance arguments or theories that could and should have been made before the [bankruptcy court] rendered a judgment.'" *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007) (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)).

Wells Fargo has failed to identify a manifest error of law or fact committed by the Court in ordering Wells Fargo to reimburse the Debtors for mortgage payments made on a note that Wells Fargo had no standing to enforce. Wells Fargo's motion lacks any statutory authority or analogous case law that the Court failed to consider when it issued its decision. And Wells Fargo did not cite any authority in direct contravention of the Court's decision. Instead, Wells Fargo rehashes old arguments that the Court has already considered or advances theories that should have been raised prior to the Court's decision. Wells Fargo's three arguments are: (1) the Debtors' claim for reimbursement of mortgage payments is not related to and does not flow from the proof of claim proceeding; (2) the Debtors' claim for reimbursement is barred by the *Rooker-Feldman* doctrine; and (3) regardless of jurisdiction, the remedy afforded by the Court was manifestly erroneous.

2

## THE REIMBURSEMENT ORDER WAS FOR PAYMENTS MADE UNDER THE DEBTORS' PLAN AND APPROPRIATELY WITHIN THIS COURT'S JURISDICTION

As noted in the Court's decision, neither party took issue with the Court's authority to enter a final order on the Debtors' motions. Nevertheless, the Court raised the issue *sua sponte* and concluded that it had the appropriate authority. (Docket No. 271 at 4-5.) Wells Fargo now disagrees, but cites only *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and Wells Fargo does not even seriously argue that the relief granted here conflicts with that curtailed in *Stern*.

Instead, Wells Fargo attempts to portray the Debtors' mortgage payments as totally unrelated to the Chapter 13 case, as attempts to "maintain their redemption rights under the foreclosure judgment." (Docket No. 280 at 4.) This argument ignores the rights the Debtors had under the Bankruptcy Code to propose a plan to de-accelerate the mortgage balance, cure their default and maintain regular mortgage payments on their residential mortgage. 11 U.S.C. §§ 1322(b)(5); 1322(c)(1).

The Debtors' modified plan was confirmed on December 8, 2010, and provides for the Debtors to maintain current mortgage payments to Litton Loan Servicing (Wells Fargo's former servicer) while they attempted to refinance their mortgage.[2] (Docket No. 135.) On March 19, 2013, the Court disallowed Wells Fargo's proof of claim, concluding that "[T]he promissory note attached to the proof of claim is payable to First National Funding Group, and that payee has not endorsed or transferred the note. Even assuming that the endorsement by Central States Mortgage to Provident is not disputed, there is no evidence of Provident's endorsement of the note to Wells Fargo." (Docket No. 217 at 5.) Wells Fargo appealed, and the District Court

---

[2] The refinancing deadline of June 30, 2011 in the Order confirming the amended plan later was eliminated when the Debtors and Wells Fargo entered into mediation to attempt to reach a loan modification. In preparation for the mediation, the Debtors learned that Wells Fargo did not properly hold the mortgage note.

3

affirmed this Court's decision to disallow Wells Fargo's claim. Since Wells Fargo had no standing to enforce the mortgage note, the Debtors filed a motion to recover all of the mortgage payments the Debtors and the Trustee had made to Wells Fargo under the plan. The Court granted the motion, requiring Wells Fargo to refund $11,716.90 to the Trustee and $73,041.49 to the Debtors. (Docket No. 271 at 24.)

While apparently not disputing that the Court had authority to order Wells Fargo to return the Trustee payments, Wells Fargo contends that the mortgage payments made directly by the Debtors are "a different matter altogether. The question now before the Court is not whether Wells Fargo may seek disbursements from the Chapter 13 trustee based on its contractual relationship with Debtors under the mortgage note; the state-court foreclosure judgment extinguished that contractual relationship." (Docket No. 280 at 4.) Wells Fargo concludes that this Court lacks authority to reverse payments made on the foreclosure judgment.

Wells Fargo misstates the applicable bankruptcy law. Even after a foreclosure judgment has been entered on a residential mortgage, a debtor in Chapter 13 can cure defaults and maintain regular mortgage payments on that mortgage. In *In re Wescott*, 309 B.R. 308 (Bankr. E.D. Wis. 2004), this Court held that a Chapter 13 debtor could de-accelerate and cure defaults on his home mortgage after the entry of a foreclosure judgment and the sale of the property at a foreclosure sale. In *Wescott*, the Court concluded that the debtor retained the right to de-accelerate and cure his defaults until confirmation of the foreclosure sale. *Id*. at 314. Confirmation of the sale did not occur in this case before the Debtors filed their Chapter 13 petition.

*Wescott* relied on *In re Clark*, 738 F.2d 869 (7th Cir. 1984), in which the Seventh Circuit Court of Appeals held that a mortgage debt that had been declared fully due and payable, and indeed evidenced by a judgment of foreclosure, could be de-accelerated in a confirmed Chapter

4

13 plan. The courts in *Clark* and *Wescott* also recognized – although Wells Fargo apparently does not – that whether a debtor is allowed to cure defaults by de-acceleration of the debt is not governed by the contract or applicable state law. As stated in *Capital Realty Services, LLC v. Benson (In re Benson)*, 293 B.R. 234, 239 (Bankr. D. Ariz. 2003): "It is not at all unusual for the Bankruptcy Code to disregard state law cure rights, because the Bankruptcy Code frequently provides federal cure rights that do not exist under state law, and may exist notwithstanding state law."

Section 1322(b)(5) is the Bankruptcy Code section that allows a debtor to cure defaults on a mortgage debt and maintain regular payments on the mortgage. Chapter 13 plans utilizing this provision are called "cure and maintain plans." The court in *In re Fortin*, 482 B.R. 35, 42 (Bankr. D. Mass. 2012), explained: "[C]ure and maintain plans under § 1322(b)(5) are quite common. The ability to take up to 5 years to pay an often substantial pre-petition mortgage arrearage while otherwise not impairing the lender's contractual rights is a valuable benefit." The plan in the Debtors' case is a cure and maintain plan. The Debtors proposed to cure the pre-petition mortgage arrearage by making payments through the Trustee and maintain the mortgage by making current mortgage payments directly to the mortgage-holder outside the plan.

Making payments "outside the plan" also is common.[3] In *In re Aberegg*, 961 F.2d 1307, 1308 (7th Cir. 1992), the court of appeals recognized that the Bankruptcy Code gives bankruptcy courts discretion to permit debtors to make payments directly to certain secured creditors.

---

[3] In some districts, although not the Eastern District of Wisconsin, current mortgage payments as well as pre-petition arrearages are paid through the Trustee. In bankruptcy parlance, these are "conduit payments." *In re Perez*, 339 B.R. 385, 391 (Bankr. S.D. Tex. 2006) (noting an increasing trend in the number of trustees making post-petition mortgage payments inside the plan). Since Wells Fargo did not seek reconsideration of the Trustee payment refund, presumably it concedes that it could not dispute an ordered refund of a conduit payment. This demonstrates the flaw in Wells Fargo's argument that the current mortgage payments are "a different matter altogether" than the Trustee payments.

Simply because the Debtors made the payments directly to Wells Fargo does not signify that the payments are not made under the Chapter 13 plan or are somehow not connected to the bankruptcy and Wells Fargo's disallowed claim. As the Fifth Circuit Court of Appeals explained in *In re Foster*, 670 F.2d 478, 489 (5th Cir. 1982): "[F]or the arrearage on a mortgage claim to be cured under § 1322(b)(5), the current mortgage payments while the case is pending must be provided for in the plan. 11 U.S.C. § 1322(b)(5) allows the debtor to 'provide for the curing of any default within a reasonable time *and maintenance of payments while the case is pending*.' Section 1322(b)(5) provides for the curing of any default, then, only when the plan also provides for the maintenance of the current mortgage payments while the case is pending." (emphasis in original).

In this case, the Debtors proposed a cure and maintain plan to de-accelerate the fully due and payable mortgage debt. They were permitted to propose such a plan, notwithstanding the foreclosure judgment, because the foreclosure sale had not been confirmed when the Chapter 13 petition was filed. *In re Clark*, 738 F.2d at 874. The Debtors' plan stated that they would make payments to the Trustee to cure the pre-petition arrearage on the mortgage and direct current payments to Litton Loan Servicing outside the plan. Maintenance of payments is contemplated and indeed required in a cure and maintain plan. 11 U.S.C. § 1322(b)(5). When Wells Fargo's claim for the pre-petition arrearage on the mortgage was disallowed because Wells Fargo does not validly hold the mortgage note, it followed that not only the Trustee payments (the "cure") but the Debtors' direct payments (the "maintain") should be refunded.

Wells Fargo's argument that the Debtors' direct payments were made on the foreclosure judgment, not on the de-accelerated mortgage, is baseless. Wells Fargo's contentions ignore that the Debtors' payments were made under a confirmed Chapter 13 plan, and that federal

6

bankruptcy law enables the Debtors to revive the mortgage contract underlying the foreclosure judgment.

In sum, under the Bankruptcy Code, both the Trustee payments and the direct payments by the Debtors were necessary and required to deal with the mortgage debt under the cure and maintain plan. Wells Fargo's premise that the payments are different is flawed. By conceding that it must return the Trustee payments, Wells Fargo exposes the fallacy in its argument about the Debtors' direct payments. Since it had no ability to enforce the mortgage note, Wells Fargo was not entitled to receive any mortgage payments in this case, whether from the Trustee or the Debtors. Since Wells Fargo received the payments under a confirmed Chapter 13 plan under a provision of the Bankruptcy Code that permits the Debtors to de-accelerate and reinstate their mortgage, despite the foreclosure judgment, the payments were received on the disallowed mortgage claim, not on the foreclosure judgment. The Court rejects Wells Fargo's argument that the Debtors' payments were not related to and did not flow from the disallowed claim. As part and parcel of the claims allowance process and directly related to the Chapter 13 plan in this case, this Court had authority to order Wells Fargo to refund the Debtors' payments.

## RECONSIDERATION IS NOT WARRANTED BY THE *ROOKER-FELDMAN* DOCTRINE

The Court has rejected Wells Fargo's *Rooker-Feldman* argument twice in this case: once in the claim objection proceeding and again in considering the Debtors' motion for return of the mortgage note. While conceding that this Court and the District Court ruled that the *Rooker-Feldman* doctrine did not prevent the disallowance of Wells Fargo's claim, Wells Fargo now urges that the doctrine applies, because the Debtors are taking an offensive rather than defensive posture. (Docket No. 280 at 6.) While it is arguable whether the Debtors' objection to Wells Fargo's claim is "defensive," the distinction is irrelevant.

7

Case 05-28262-svk    Doc 285    Filed 11/21/14    Page 7 of 14

Wells Fargo yet again insists that the Debtors' current mortgage payments were made pursuant to the state court foreclosure judgment, and that by ordering Wells Fargo to refund those payments, the Court is impermissibly interfering with that judgment. Wells Fargo argues: "At bottom, Debtors' current claim for direct restitution of payments is tantamount to a request to nullify or rescind the obligation under which those payments were made. This Court lacks the authority to entertain such a request because the obligation under which the payments were made resides in a state judicial decree, not in an executory contract." (*Id*.) As explained above, the Debtors' obligation to make the mortgage payments did not "reside in" the foreclosure judgment. Rather, the payments were made pursuant to a confirmed Chapter 13 plan that allowed the Debtors to de-accelerate their mortgage debt in spite of the foreclosure judgment. Under Wells Fargo's theory, every order confirming a cure and maintain plan after entry of a foreclosure judgment would violate the *Rooker-Feldman* doctrine.

Wells Fargo also cites *Butner v. United States*, 440 U.S. 48, 56 (1979) for the proposition that "Federal bankruptcy courts should take whatever steps necessary 'to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.'" (Docket No. 280 at 7.) Wells Fargo takes the *Butner* quote completely out of context. The case involved a mortgage creditor's security interest in rents; a minority of courts had recognized such a security interest in bankruptcy, even if the creditor had not taken the steps required under state law to perfect its interest in the rents. The Supreme Court rejected that view, instead holding that bankruptcy courts should look to state law to define security interests. *Butner*, 440 U.S. at 56. Under *Butner,* if a creditor was required to seek the appointment of a receiver to perfect its interest in rents, and it had not done so prior to the

8

bankruptcy, then the creditor should not be given a security interest in the rents under the equitable powers of the bankruptcy court. *Id*.

Wells Fargo's extension of the *Butner* holding to this case borders on the absurd. The Supreme Court did not rule that mortgage creditors must receive the exact same rights in bankruptcy cases as they enjoy under state law in the absence of a bankruptcy. Under this theory, the automatic stay, preference and fraudulent transfer recoveries and indeed the cure and maintain plan provisions of Chapter 13 would be meaningless. The Debtors were entitled to file Chapter 13 and de-accelerate their mortgage, and the confirmation of their cure and maintain plan is valid notwithstanding the foreclosure judgment. Therefore, the Court's order requiring Wells Fargo – the wrong creditor – to refund mortgage payments is not impermissible and does not violate the *Rooker-Feldman* doctrine.[4]

## REQURING WELLS FARGO TO REFUND THE MORTGAGE PAYMENTS IS NOT MANIFESTLY ERRONEOUS

Wells Fargo rehashes its arguments about the finality and sanctity of the foreclosure judgment one last time in concluding its motion for reconsideration. Without commenting on the fact that this Court and the District Court on appeal have held that Wells Fargo is not entitled to enforce the Debtors' mortgage note, Wells Fargo declares the premise that it is an improper payee "not well-taken." (Docket No. 280 at 7.) Again, Wells Fargo's sole support for its argument is the state court foreclosure judgment: "Wells Fargo is the foreclosure-judgment creditor of record unless and until the state court finds reason to modify its orders." (Docket No. 280 at 7.) As this Court and the District Court have already noted, the order substituting Wells

---

[4] By focusing on Wells Fargo's new arguments concerning *Rooker-Feldman*, the Court is not retreating from the prior ruling that the doctrine is not violated because the court never issued an order on proper notice to the Debtors that Wells Fargo had standing to enforce the mortgage note. (See Docket Nos. 217 at 4-5; 271 at 20-21.)

9

Fargo as plaintiff in the foreclosure case was signed *ex parte* on the same day it was submitted to the state court. (Docket No. 233 at 7.) The state court did not consider whether the Debtors objected to Wells Fargo as their mortgage creditor, since the Debtors were never given notice of the motion to substitute Wells Fargo as plaintiff. There is nothing attached to the substitution petition demonstrating that Wells Fargo had standing to enforce the mortgage note. And the time for the Debtors to appeal or move the state court to reconsider its order had not expired when they filed their Chapter 13 petition. In sum, the state court order substituting Wells Fargo as plaintiff in the foreclosure action was not a final determination that Wells Fargo was entitled to enforce the mortgage note. Accordingly, as the District Court previously confirmed, neither the *Rooker-Feldman* doctrine nor judicial estoppel prevented this Court from determining whether Wells Fargo had standing to enforce the mortgage. (*Id*. at 6 – 8.) The state court order substituting Wells Fargo as plaintiff was not binding on this Court for purposes of determining whether Wells Fargo had a valid claim in the bankruptcy case. It is likewise not binding to prevent granting relief flowing from disallowance of that claim.

Finally, Wells Fargo argues: "[N]either the Debtors nor the general creditors have any colorable proprietary claim to the payments. Debtors' request is, in substance, a turnover request." (Docket No. 280 at 7-8.) The Court rejects Wells Fargo's characterization of this action as a turnover proceeding, and questions why Wells Fargo did not raise this argument prior to its motion for reconsideration. In its decision, the Court required the payments received by Wells Fargo on its pre-petition arrearage claim to be returned to the Trustee and the payments it received from the Debtors to maintain the mortgage to be returned to the Debtors. This directive is not a turnover order but an order recognizing that because it was not the party entitled to

10

Case 05-28262-svk    Doc 285    Filed 11/21/14    Page 10 of 14

enforce the mortgage note, Wells Fargo was not the party entitled to receive the mortgage payments.

Accordingly, the Debtors do have a superior interest to Wells Fargo in the mortgage payments. As the Court explained in its decision, by receiving mortgage payments to which it was not entitled, Wells Fargo subjected the Debtors to the possibility of having to pay twice. This amounts to unjust enrichment of Wells Fargo, and like the plaintiff in *Thomas v. Urban Partnership Bank, Residential Credit Solutions, Inc.*, 2013 U.S. Dist. LEXIS 59818, at *29 (N.D. Ill. April 26, 2013), if the Debtors "made the payments on the mistaken premise that [Wells Fargo] was the loan's owner, then 'fundamental principles of justice, equity, and good conscience' require that [Wells Fargo] disgorge the payments."

Wells Fargo also cites Restatement (Third) of Restitution and Unjust Enrichment § 54(4)(c) (2011), noting that "If rescission would prejudice intervening rights of innocent third parties, the remedy will on that account be denied." (Docket No. 280 at 8.) However, Wells Fargo did not support its argument with statutory authority or case law, nor did it explain how it is an innocent third party. Wells Fargo's claim was disallowed because it did not have standing to enforce the mortgage note underlying the claim. Now the Court has ordered Wells Fargo to refund payments made to cure and maintain that mortgage note. *See In re Guild Music Corp.*, 163 B.R. 17, 18 (Bankr. D.R.I. 1994) ("We also believe that 11 U.S.C. § 502(j) provides ample authority to support the Trustee's request, and that the attempt to collect overpayments is not prejudicial to creditors who received monies to which they were not entitled under the confirmed plan."). Wells Fargo has failed to show any manifest error of law or fact, and its motion for reconsideration should be denied.

11

## THE COURT CORRECTLY CALCULATED
## THE MORTGAGE PAYMENTS BASED ON THE RECORD

The Debtors filed two motions to reconsider on November 17, 2014. (Docket Nos. 282, 283.) Their motions reference Bankruptcy Rule 9023, but a motion to alter or amend a judgment under that rule must be filed no later than 14 days after entry of the judgment. The judgment in this case was entered on October 21, 2014, requiring a Rule 9023 motion to have been filed by November 4, 2014. The Debtors' motion could be construed timely under Bankruptcy Rule 9024, incorporating Federal Rule of Civil Procedure 60, but relief under those rules is only granted in extraordinary circumstances. The court in *Rezin v. Barr (In re Barr)*, 183 B.R. 531, 537 (Bankr. N.D. Ill. 1995), explained the standard to be applied to a Rule 60(b)(1) motion:

> The burden of proof in seeking relief from a final judgment or order initially lies with the moving party. *Simons v. Gorsuch*, 715 F.2d 1248, 1252 (7th Cir. 1983). Plaintiffs must establish that they qualify for Rule 60(b) relief by "clear and convincing evidence." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) (citation omitted); *Simons*, 715 F.2d at 1252. However, whether to grant relief requested under Rule 60(b) is left largely to the trial court's discretion. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994). Rule 60(b) is an extraordinary remedy, designed to address mistakes attributable to exceptional circumstances and not mere erroneous applications of law by a trial court.

Turning to the substance of the Debtors' arguments, they first claim that the Court did not properly calculate the amount of the mortgage payment refund. (Docket No. 282.) The Debtors complain that they never before saw "Exhibit A" detailing the calculations. As explained in the decision, the Court created Exhibit A to summarize Wells Fargo's transaction history. (Docket No. 271 at 12.) The transaction history was filed with the Court and provided to the Debtors in connection with the claim objection proceeding. (Docket No. 211, Ex. 11.)

The Debtors contend that they should receive credit for the "lost payments" that the Court ordered Wells Fargo to credit to the Debtors in the first claim objection proceeding. The

transaction history and Exhibit A both include the "lost payments." Wells Fargo's transaction history shows that these payments were credited to the Debtors as multiple payments on May 9, 2006 and May 31, 2006, and that is why they are included on Exhibit A and have been ordered to be returned to the Debtors. (*Id*.)

According to an email from Wells Fargo's attorney to the Debtors, Wells Fargo applied the $7,500 sanction awarded by the Court to the Debtors' escrow account. (Docket No. 103 at 10.) This amount was therefore added to the other mortgage payments in calculating the refund. The escrow account presumably was used to pay real estate taxes, which are subtracted from the refund. Not adding the sanction would have impermissibly deprived the Debtors of the benefit of this sanction, while adding the $27,424.50 in "lost payments" would have resulted in double counting.

As in their original motion, the Debtors make sweeping, unsupported statements about the amount and number of mortgage payments they paid. These allegations do not constitute evidence on which the Court can rely in awarding a refund. The transaction history was the only reliable evidence in the record to calculate the amount of the payments. Under the circumstances, the Court will not reconsider the amount of the refund based on the Debtors' motion.

### THE COURT APPROPRIATELY CONSIDERED AND REJECTED THE DEBTORS' REQUEST FOR ATTORNEYS' FEES

The Debtors' second motion seeks reconsideration of the Court's denial of attorneys' fees. (Docket No. 283.) The Court did not misapply the law in declining the Debtors' original request for attorneys' fees. Rather, this issue was carefully analyzed and considered in the original decision. (Docket No. 271 at 15-17.) The Debtors have merely rehashed their arguments and attempted to add more details about Wells Fargo's attorneys' conduct, which is

13

Case 05-28262-svk    Doc 285    Filed 11/21/14    Page 13 of 14

not appropriate at this stage. The Debtors strongly disagree with the Court's decision to deny their request for legal fees, and their efforts are directed at convincing the Court to change its mind.

But the purpose of a motion for reconsideration "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment. . . . A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *In re Tirado*, 329 B.R. 244, 247 (Bankr. E.D. Wis. 2005) (internal citation and quotations omitted).

In conclusion, neither Wells Fargo nor the Debtors are entitled to reconsideration of the Court's original decision, and the motions will be denied by separate orders.

Dated: November 21, 2014.

By the Court:

*Susan Kelley*
Susan V. Kelley
U.S. Bankruptcy Judge