UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Dennis E. Thompson and
Pamela A. Thompson,

Debtors.

Chapter 13

Case No. 05-28262-svk

**MEMORANDUM DECISION ON REMAND**

A typical Chapter 13 case can last up to five years. The case filed by Dennis and Pamela Thompson ("the Debtors") has been around since 2005. Protracted litigation including two appeals over the proof of claim filed by Wells Fargo Bank ("Wells Fargo")[1] is at the root of this atypical case. In March 2013, this Court disallowed Wells Fargo's claim, finding that Wells Fargo was not the holder of the mortgage note underlying the claim. (ECF No. 217.)[2] Wells Fargo appealed, and the district court affirmed the disallowance of the claim. This Court then issued a memorandum decision on collateral issues, such as the Debtors' entitlement to an award of legal fees from Wells Fargo. (ECF No. 271.)

After the Court denied reconsideration, another appeal followed. The district court has now vacated the order requiring Wells Fargo to reimburse the Debtors for the mortgage

---

[1] The original proof of claim was filed in the name of Wells Fargo Bank National Association, solely in its capacity as trustee under the Pooling and Servicing Agreement dated June 1, 2000, Home Equity Loan Asset backed certificates, series 2000-2, by its servicer, Litton Loan Serving LP ("Litton"). In 2008, Litton filed a claim secured by the same mortgage for The Provident Bank, d/b/a/ PCFS Financial Services. Later, Litton merged with Ocwen Loan Servicing LLC ("Ocwen"). For simplicity, and to remain consistent with the District Court's opinion, this opinion will refer to Wells Fargo when discussing the proof of claim.

[2] All references are to the Court's CM/ECF docket in the Debtors' bankruptcy case no. 05-28262.

payments they made on the disallowed claim.³ The district court has remanded the case to this Court to clarify under what authority the Court acted in issuing the order. In this decision, in light of the district court's comments, the Court will revise its ruling and order Wells Fargo to refund the mortgage payments to the Chapter 13 trustee. The Court also addresses the district court's concern that the refund order was not issued in an adversary proceeding.

Jurisdiction

The allowance or disallowance of a proof of claim is a "core proceeding" as defined by 28 U.S.C. § 157(b)(2)(B). *See Stern v. Marshall*, 131 S. Ct. 2594 (2011). Neither party has questioned this Court's jurisdiction or authority to enter final orders on the claim or the collateral issues associated with the claim, and this Court's October 21, 2014 Memorandum Decision *sua sponte* developed the question of jurisdiction in depth. (ECF No. 271, at 4-5.)

I.     Facts and Procedural History

On October 27, 2005, the Debtors objected to the amount of the original proof of claim filed by Wells Fargo. (ECF No. 24.) They contended that Wells Fargo's servicer failed to credit the Debtors' mortgage payments going back to 2002. On January 6, 2006, the Debtors' attorney filed correspondence stating that the Debtors failed to provide him with proof of the alleged missing payments, and he withdrew the claim objection. (ECF No. 35.) The Court confirmed the Debtors' Chapter 13 plan on January 12, 2006. (ECF No. 37.)

---

³ The propriety of the denial of Wells Fargo's claim is not at issue. The district court previously affirmed that this Court properly disallowed Wells Fargo's claim. *Ocwen Loan Servicing, LLC v. Thompson*, No. 13-CV-487, 2014 U.S. Dist. LEXIS 2109, at *14-15 (E.D. Wis. Jan. 7, 2014).

-2-

On January 17, 2006, the Debtors filed correspondence claiming that their attorney acted without their permission when he withdrew the objection to Wells Fargo's claim. The correspondence included multiple pages of evidence that the Debtors made mortgage payments that apparently had not been credited to their account. (ECF No. 40.) The Debtors' attorney withdrew, and, except for a period when they attempted to mediate their disputes with Wells Fargo, the Debtors have represented themselves for the balance of the case.

On June 27, 2006, the Court held an evidentiary hearing on the claim objection, and a Litton bankruptcy research specialist testified that an audit showed that the Debtors indeed had made payments that were not credited to their account. (ECF No. 67.) After another hearing specifically concerning whether Litton should be sanctioned for providing inaccurate information to the Court concerning the Debtors' mortgage payments, on September 22, 2006, this Court issued a decision sustaining the Debtors' objection to the claim and reducing the claim by certain amounts. (*Id.*) During that initial claim hearing, the identity of Wells Fargo was not an issue. The Debtors, the Court and the attorney for the claimant all treated the claimant as Litton, not Wells Fargo.

Wells Fargo filed an amended claim on October 24, 2006. The Debtors filed an amended plan on November 2, 2006, proposing to pay the Trustee the sum of $184.64 per month and to pay Litton directly monthly mortgage payments of $1,473.06. (ECF No. 86.) The plan also proposed to refinance the mortgage by June 31, 2007 (sic), and it provided that if refinancing

-3-

could not be obtained, then the Debtors would sell their residence and settle all claims in full.[4] (*Id.*) In order to accomplish the refinancing, the Debtors needed to show that they were making current mortgage payments; however, Litton failed to report their payments to the credit reporting bureaus. The Debtors subsequently filed correspondence that questioned the amended claim and stated that Litton was not correctly applying their payments. (ECF No. 89.) The Court held a hearing on March 20, 2007, and issued an order on April 26, 2007, requiring Litton to report the Debtors' timely mortgage payments. (ECF No. 92.) The Debtors filed multiple letters continuing to allege that Litton failed to accurately account for their payments and report them to the credit reporting bureaus. (ECF Nos. 100, 101, 103.)

On January 16, 2008, Litton filed a motion for relief from stay alleging that the Debtors defaulted on their post-petition mortgage payments. (ECF No. 109.) The Debtors objected, claiming that each payment had been made and that the Debtors had copies of tracking numbers to prove it. (ECF No. 111.) Although the Court scheduled an evidentiary hearing on the motion, the parties reported that they had settled, and the Court canceled the hearing. On August 22, 2008, Litton withdrew the motion for relief from stay, indicating that it would file a claim for the post-petition mortgage arrearages. On August 20, 2008, Litton filed that claim on behalf of The Provident Bank d/b/a PCFS Financial Services. On August 25, 2008, the Debtors objected to the amended claim. (ECF No. 116.) On October 7, 2008, this Court held an evidentiary hearing on

---

[4] The Court confirmed the modified plan on December 9, 2010 and extended the deadline for refinancing and completion of the plan to June 30, 2011. (ECF No. 135.) The deadline to refinance or sell was later waived when the Debtors and Wells Fargo entered mediation.

the claim objection. The hearing was adjourned, and on November 4, 2008, the parties informed the Court that the matter was resolved and that Provident would file an amended claim.

No amended claim was filed. Due to the collapse of the real estate mortgage market, the Debtors were unable to refinance their mortgage, and they contacted Litton in an attempt to modify the existing mortgage. When Litton failed to respond, the Debtors filed correspondence asking the Court to intervene. (ECF No. 137.) In the correspondence, the Debtors attached a letter they sent to Litton in November 2010 asking for proof of ownership of the mortgage note. (*Id.*) At a hearing on the Debtors' correspondence held on July 15, 2011, the Court invited the Debtors and Litton to participate in the Court's mortgage modification mediation program. (ECF No. 144.) The Debtors filed a motion to participate in the program, Litton consented, and the Court entered an order referring the Debtors and "The Provident Bank d/b/a PCFS Financial Services (the "mortgage creditor")" to engage in mediation. During the mediation, Wells Fargo, not Provident, claimed to be the rightful owner of the note and mortgage, but the Debtors' title search revealed a defect in this claim. (Hearing Recording, ECF No. 164, at 10:50.)

On March 19, 2012, the Debtors filed a motion that challenged Wells Fargo's standing to file the claim. (ECF No. 159.) In the motion, the Debtors asked for the return of $112,375 they paid to "the servicer for Wells Fargo, Litton Loan/Ocwen." (*Id.*) Wells Fargo's servicer, Ocwen, filed an answer to the motion suggesting that a motion to vacate a summary judgment of foreclosure "shall be filed in civil court, not bankruptcy court." (ECF No. 163.) The Court construed the motion as an objection to Wells Fargo's proof of claim and scheduled an evidentiary hearing. The parties again attempted mediation, but it was unsuccessful. Discovery disputes arose. At a combined pretrial conference on the claim objection and hearing on the

-5-

Debtors' motion to compel discovery, the Court cautioned that the Debtors should continue to make mortgage payments and noted that "if it is determined that they are not entitled to it, the payments have to be paid back." (Hearing Recording, ECF No. 190, at 39:39.) The parties filed exhibits and witness lists. (ECF Nos. 210, 211, 212.) On March 14, 2013, the Court held an evidentiary hearing on the claim objection and issued an oral ruling disallowing the claim and directing that any payments the Debtors made to the Chapter 13 trustee after the claim objection was filed should not be paid to Wells Fargo. (ECF No. 215.) The Debtors briefly mentioned the return of their direct mortgage payments during the hearing, but Wells Fargo did not address the matter. (Hearing Recording, ECF No. 214, at 37:45-50:30.)

On March 19, 2013, the Court issued a written decision and order disallowing Wells Fargo's claims. (ECF No. 217.) The decision did not address the Debtors' request for the return of mortgage payments, and the Debtors again raised the issue in a motion filed on August 12, 2013. (ECF No. 222.) By this time, Wells Fargo had appealed the Court's March 19, 2013 decision, so the Court held in abeyance a decision on the request for the return of money until the appeal was complete. (ECF No. 225.)

When the district court affirmed the disallowance of the claim, the Court held a status conference and entered a scheduling order on the motion, along with motions the Debtors had filed for attorneys' fees and a return of the original note. (ECF No. 237.) The order set a schedule for briefs and gave the parties the opportunity for a hearing. (*Id.*) Both parties participated in briefing, but neither party requested a hearing. Wells Fargo's brief focused on three arguments: (1) the Court had orally "ruled" at the claim objection hearing in 2013 that Wells Fargo would not be required to return payments made before the second claim objection

-6-

was filed; (2) the equities favored Wells Fargo since Ocwen and Litton paid the real estate taxes on the property; and (3) Wells Fargo's standing to enforce the mortgage note already had been decided by the state court. (ECF No. 246.) Wells Fargo did not question the Court's authority to order the return of payments made after the claim objection was filed, nor did it argue that an adversary proceeding was required to order the return of mortgage payments. (*Id.*) At a hearing on another motion held on April 1, 2014, the Court specifically told Wells Fargo's attorney that the Court could and was reconsidering the allowance of the claim and offered Wells Fargo's attorney the opportunity to supplement the brief. (ECF No. 249.) Wells Fargo chose not to file a supplemental brief.

On October 21, 2014, the Court entered a memorandum decision that granted, in part, the Debtors' motions. The Court denied the Debtors' requests for attorneys' fees and return of the original mortgage note, but granted the Debtors' motion for return of the money paid to Wells Fargo. The Court determined that under an unjust enrichment theory, Wells Fargo should refund $73,041.49 to the Debtors. In calculating this amount, the Court used exhibits that had been filed by Wells Fargo in response to the Debtors' claim objection and motion for refund of mortgage payments. The Court also addressed the Debtors' standing to seek the return of funds on behalf of the bankruptcy estate. Although Bankruptcy Code § 502(j) states that reconsideration of a claim "does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor," the Court cited *Kerney v. Capital One Fin. Corp. (In re Sims),* 278 B.R. 457, 484 (Bankr. E.D. Tenn. 2002), for the proposition that "[C]hapter 13 debtors, either individually or in conjunction with the chapter 13 trustee, have standing to recover on behalf of the estate any sums misdistributed." (ECF No. 271, at 14.)

-7-

Wells Fargo filed a motion to reconsider, arguing that the Court lacked jurisdiction under the *Rooker-Feldman* doctrine or in the alternative that the Debtors' request was in substance a turnover request, and the Court had inappropriately granted that request.  (ECF No. 280.)  Wells Fargo did not question the procedural posture of treating the Debtors' motion as a contested matter rather than an adversary proceeding.  (*Id.*)  On November 21, 2014, the Court issued a memorandum decision denying the reconsideration motion and explained the reasoning behind the original decision, rejecting Wells Fargo's arguments that the Debtors' mortgage payments were made on the foreclosure judgment, rather than Wells Fargo's proof of claim.  (ECF No. 285.)

On appeal, the district court reviewed the decision and remanded to this Court to explain its authority to order payments returned to the Debtors without an adversary proceeding.  (ECF No. 337.)  After reviewing the Court's docket and especially the pleadings filed by Wells Fargo, the Court concludes that Wells Fargo and the Debtors were afforded all the protections of an adversary proceeding during the years of the pendency of this dispute.  However, the prudent response to the district court's concerns is to revise the Court's original decision and order and require Wells Fargo to refund the payments to the Trustee for the benefit of the estate.

II. Analysis

A. The mortgage payment refund order was part and parcel of the claim reconsideration process.

    i. The Debtors had standing to use 11 U.S.C. § 502(j) for reconsideration of Wells Fargo's claim.

The Court ordered the refund of the Debtors' mortgage payments as part of the claims allowance process.  If a proof of claim has been properly filed, it is deemed allowed unless a

Case 05-28262-svk    Doc 343    Filed 07/22/15    Page 8 of 15

party in interest objects.  11 U.S.C. § 502(a).  A Chapter 13 debtor has standing to object to a creditor's proof of claim.  *In re Roberts*, 20 B.R. 914, 917 (Bankr. E.D.N.Y. 1982).  Here, the Debtors objected to the proof of claim from almost the beginning of the case.  (ECF No. 24.)  First they contended that their payments had not been properly applied to determine the amount of the claim.  (*Id*.)  At the hearing on the claim objection, Litton admitted that the Debtors' contentions were correct.  Litton explained that the lost or misapplied payments occurred due to the transfer of the loan servicing obligations from Provident to Litton.  (ECF No. 67, at 4.)

The Court sustained the Debtors' original objection and reduced the amount of the proof of claim.  (ECF No. 67.)  Later, when the Debtors were unable to refinance their mortgage loan and attempted to obtain a loan modification, the Debtors learned that Wells Fargo was claiming to own the mortgage note, but that the note was not properly endorsed to Wells Fargo.  (ECF No. 159.)  Under § 502(j), the Court treated the Debtors' subsequent objection to Wells Fargo's standing as a reconsideration of a previously allowed claim.  Like objections made under Bankruptcy Code § 502(a), a Chapter 13 debtor has standing to move to reconsider a claim.  *See* Fed. R. Bankr. P. 3008 ("A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate.")  As a party in interest, the Debtors had the ability to seek disallowance of Wells Fargo's claim, even though the claim had previously been allowed in a reduced amount.

      ii.      Requiring disgorgement of payments made on the disallowed claim was proper.

Ordering the disgorgement of mortgage payments also was proper as part of the claims allowance process.  As the court noted in *In re Windom*, 284 B.R. 644, 648 (Bankr. E.D. Tenn. 2002):

The decision to enter a disgorgement order is within the discretion of the bankruptcy court. "Although not founded in any statutory avoidance or recovery power, courts have authorized Chapter 13 trustees to recover overpayments to creditors." 1 KEITH M. LUNDIN CHAPTER 13 BANKRUPTCY § 61.1 (3d ed. 2000).

The request for disgorgement usually arises after a motion by the Chapter 13 trustee. *See, e.g., United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997) (the bankruptcy court had the authority to order disgorgement of funds received in derogation of the confirmed Chapter 13 plan); *Stevens v. Baxter (In re Stevens)*, 187 B.R. 48 (Bankr. S.D. Ga. 1995), *aff'd in part, rev'd in part, sub nom Ford Motor Credit Co. v. Stevens*, 130 F.3d 1027 (11th Cir. 1997) (Chapter 13 trustee may recover overpayments to creditors); *In re Sims*, 278 B.R. at 477 (Bankr. E.D. Tenn. 2002) ("a trustee's authority to recover overpayments from a creditor is implied or contemplated by the Bankruptcy Code notwithstanding the absence of a specific Bankruptcy Code provision expressly granting such authority").

Occasionally, courts have also ordered disgorgement upon objections to claims by debtors when equity required. *See In re Sims*, 278 B.R. at 484 (Chapter 13 debtors have standing to seek recovery of overpayments by the Chapter 13 trustee to creditor filing fraudulent proofs of claim); *United States v. Clifford (In re Clifford)*, 255 B.R. 258, 266-67 (D. Mass. 2000) (ordering Internal Revenue Service to disgorge overpayments made outside the plan back to the bankruptcy estate after objection by debtor).

In *Windom*, the court refused to order disgorgement after applying the creditor's equitable defense of laches. 284 B.R. at 649. In this case, the Court balanced the equities and ruled for the Debtors. The creditor's actions in this case included misapplying the Debtors' payments, providing notices to the Debtors in violation of the automatic stay and filing pleadings and claims on behalf of Provident (the creditor the Debtors believed held their mortgage note), when apparently Wells Fargo erroneously claimed to hold the note throughout the case. And, as stated in the memorandum decision, allowing Wells Fargo to keep payments on a mortgage note it does not own, subjects the Debtors to having to pay twice and constitutes unjust enrichment.

-10-

iii.     The refund should be paid to the Trustee, not the Debtors.

However, the district court has pointed out that while this Court's disgorgement order may have been "logical and expedient," it was not supported by the Bankruptcy Code, in that § 502(j) only expressly permits disgorgement of payments on a disallowed claim to the trustee. *Thompson v. Ocwen Loan Servicing*, *LLC*, No. 14-CV-1502, 2015 U.S. Dist. LEXIS 69854, at *14-15 (E.D. Wis. May 29, 2015). The district court commented that § 502(j) "preserves the estate's rights to recover excess payments made to any creditor." *Id*. at *9 (emphasis supplied); *see also Sims*, 278 B.R. at 476-77 ("a corollary of the right to object to claims is the right to recover overpayments which have been inappropriately distributed. Typically these actions should be instigated by the chapter 13 trustee…[but] chapter 13 debtors, either individually or in conjunction with the chapter 13 trustee, have standing to recover on behalf of the estate any sums misdistributed.").

As explained in the Court's decision and order denying reconsideration, the direct mortgage payments as well as the Trustee payments were made on Wells Fargo's disallowed claim, and Wells Fargo should refund those payments. But after considering the district court's decision and other precedent such as *Sims*, those payments should be returned to the Trustee for the benefit of the estate. This solution better comports with § 502(j) and advances the policy that creditors with legitimate claims should benefit from the Debtors' recovery of funds paid to a creditor whose claim has been disallowed. If the Debtors had not paid these excessive payments on a disallowed claim, they may have had more disposable income available to pay other creditors more and faster.

-11-

Given the age of this case, and the fact that other creditors apparently have been paid their allowed claims under the Debtors' plan, requiring Wells Fargo to direct the payments to the Trustee may appear to be an exercise in futility. In *Akers v. Beal Bank (In re Akers),* No. 07-00662, 2012 Bankr. LEXIS 3538 (Bankr. D.D.C. Aug. 1, 2012), the court in dicta noted: "In this case it would be silly to require the trustee to bring such an action [for disgorgement of excess payments on a secured claim] because any proceeds recovered would be distributed to the debtor because all allowed secured claims have been paid in full as required by the terms of the confirmed plan." *Id.* at *8 n.2.

But at the time the Court disallowed Wells Fargo's claim and ordered disgorgement, there were other claims remaining to be paid. That the passage of time and the Debtors' plan payments have now satisfied those claims should not relieve Wells Fargo of its obligation to return the excess payments to the Trustee. If the Trustee determines in a review of this case that the funds should be distributed to the Debtors, that is the result that complies with the Bankruptcy Code.

> B. Any error in failing to treat the Debtors' refund request as an adversary proceeding was harmless.

Alternatively, the Court's error in treating the Debtors' request for a refund of mortgage payments as a contested matter rather than an adversary proceeding was harmless because Wells Fargo received due process. The fundamental requirements of due process are notice and the opportunity to be heard upon such notice. *Link v. Wabash R. Co.,* 370 U.S. 626, 632 (1962).

Wells Fargo had ample notice of the Debtors' claims for a refund of the sums paid on the claim. The Debtors served their motions on Wells Fargo's attorneys. (ECF Nos. 159, 222.) Wells Fargo responded to the motions. (ECF Nos. 163, 246.) When the Debtors pressed their

-12-

motions for a refund of their mortgage payments and for Wells Fargo to pay their attorneys' fees, the Court issued an order referencing those motions stating: "No action will be taken on the Debtors' motions until after the District Court enters a final order in the appeal. Counsel for Ocwen should contact the Court to issue a briefing and hearing schedule after the District Court enters the order in the appeal." (ECF No. 225.) After the appeal was decided, the Debtors renewed the refund request, and after a scheduling conference in which Wells Fargo's attorney participated, the Court issued a briefing schedule. (ECF No. 237.) At the scheduling conference, and in its subsequent briefs, Wells Fargo's attorney did not object to the treatment of the Debtors' motion as a contested matter rather than an adversary proceeding.

Wells Fargo had ample opportunity for a hearing. After several discovery disputes were considered by the Court, the Court held an evidentiary hearing on the Debtors' claim objection, where Wells Fargo appeared and presented evidence and legal argument. (ECF No. 215.) The parties filed exhibits and witness lists. (ECF Nos. 210, 211, 212.) In response to the Debtors' inquiry, the Court briefly addressed the issue of the return of mortgage payments and trustee payments at the March 14, 2013 evidentiary hearing. Wells Fargo could have, but did not, request a hearing on the Debtors' motions for a refund, for attorneys' fees and for return of the mortgage note. The parties treated these motions as collateral legal issues flowing from the disallowance of Wells Fargo's claim, and the only "evidentiary" issue (the amount of the refund) was decided using exhibits that Wells Fargo had filed with the Court.

The Court treated the Debtors' motion for a refund of mortgage payments as a contested matter, not an adversary proceeding. Adversary proceedings require the filing of a complaint and service of a summons with the complaint. Fed. R. Bankr. P. 7003, 7004. Contested matters

-13-

are initiated by a motion, but the motion must be served in the same manner as an adversary complaint. Fed. R. Bankr. P. 9014(a), (b). Many of the adversary proceeding rules apply in contested matters, including the discovery rules. Fed. R. Bankr. P. 9014(c); *see, e.g., In re Polaroid Corp.*, 527 B.R. 335, 346 (D. Minn. 2015) ("As contested matters, claim objections are subject to standard discovery procedures.") In fact, Wells Fargo's servicer moved for a Rule 26(c) protective order concerning some of the Debtors' document production requests, and the Court held a hearing on the motion. (ECF Nos. 195, 196, 206.) After the Court disallowed the claim, Wells Fargo continued to actively participate in the proceedings, responding to the Debtors' motions, filing briefs and appearing at hearings.

Courts have not elevated form over substance and required an adversary proceeding when a creditor has appeared before the court in a contested matter and vigorously defended itself. *See, e.g., In re Good*, 428 B.R. 235, 243 (Bankr. E.D. Tex. 2010) (adversary proceeding is unnecessary where purpose of requiring adversary proceeding is to afford the creditor sufficient notice that it may be deprived of property interest, and creditor actively participates in contested matter). Moreover, where a creditor has not objected to the bankruptcy court's treatment of a claim objection and related relief as a contested matter, courts have presumed that the creditor consents to the procedural treatment. *See Blais v. Blais*, 512 B.R. 727, 731 n.4 (B.A.P. 1st Cir. 2014).

In this case, Wells Fargo was a full participant in the contested matters instituted by the Debtors' motions, and the Court's docket demonstrates that ample notice and the opportunity for evidentiary hearings was provided. Wells Fargo did not respond to the Debtors' motions by arguing that the case should be conducted as an adversary proceeding. When the Court invited

-14-

Wells Fargo to file a supplemental brief on the issue of reconsideration of the Court's oral ruling, Wells Fargo could have taken that opportunity to object to the Court's procedural treatment of the matter but it did not do so.

Since Wells Fargo received the protections of an adversary proceeding in the Court's consideration of this contested matter and never objected to the Court's procedures, any failure of the Court to require the Debtors to refile their motion as a complaint and conduct this proceeding as an adversary proceeding was harmless.

III. Conclusion

For the reasons stated above, the Court revises its memorandum decision and directs that Wells Fargo must pay $73,041.49 to the Chapter 13 Trustee. A separate order will be issued.

Dated: July 22, 2015

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge

-15-